## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

CHESAPEAKE APPALACHIA, L.L.C.,

               Plaintiff,

   v.

RUSSELL E. BURKETT and GAYLE
BURKETT,

               Defendants.

Case No. 3:13-cv-3073

## PLAINTIFF CHESAPEAKE APPALACHIA, L.L.C.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNT I

Daniel T. Brier
Myers, Brier & Kelly LLP
425 Spruce St. Suite 200
Scranton, PA 18501
Tel: (570) 342-6100
Fax: (570) 342-6147

Daniel T. Donovan (*pro hac vice* forthcoming)
Ragan Naresh (*pro hac vice* forthcoming)
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Washington, DC 20005
Tel: (202) 879-5000
Fax: (202) 879-5200

## TABLE OF CONTENTS

PROCEDURAL HISTORY..................................................................4

STATEMENT OF UNDISPUTED MATERIAL FACTS ...........................6

STATEMENT OF QUESTIONS........................................................7

ARGUMENT ...............................................................................7

I.   "CLASS ARBITRABILITY" IS A "GATEWAY" ISSUE THAT
     MUST BE DECIDED BY THE COURT.......................................8

     A.   Class Arbitration Is a Matter of Consent, Not Coercion....................... 9

     B.   "Class Arbitrability" Is for the Court to Decide................................. 11

II.  THERE IS NO "CLEAR AND UNMISTAKABLE" EVIDENCE
     THAT CHESAPEAKE AGREED TO SUBMIT CLASS
     ARBITRABILITY TO THE ARBITRATION PANEL. ............................ 16

     A.   Incorporating AAA Rules Is Not "Clear and Unmistakable"
          Evidence That Chesapeake Agreed to Submit Class Arbitrability
          to the Panel. ....................................................................... 16

     B.   The Breadth of the Arbitration Clause Is Not Clear and
          Unmistakable Evidence. ...................................................... 18

     C.   Chesapeake Did Not Waive Its Right to Have Class Arbitrability
          Decided by a Court. ............................................................ 19

CONCLUSION ....................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Am. Express Co. v. Italian Colors Rest.*,
   133 S. Ct. 2304 (2013) ........................................................................... 9

*AT&T Mobility LLC v. Concepcion*,
   131 S. Ct. 1740 (2011) ...................................................................... 10, 15

*AT&T Mobility LLC v. Smith*,
   No. 11-cv-5157, 2011 WL 5924460 (E.D. Pa. Oct. 7, 2011) ............................ 10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ......................................................................... 11, 16

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ............................................................................. 9

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ......................................................................... 9

*Corrigan v. Domestic Linen Supply Co.*,
   No. 12 C 0575, 2012 WL 2977262 (N.D. Ill. July 20, 2012) ...................... 16, 17

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995) ..................................................................... passim

*Gans v. Mundy*,
   762 F.2d 338 (3d Cir. 1985) .................................................................. 8

*Green Tree Fin. Corp. v. Bazzle*,
   539 U.S. 444 (2003) ......................................................................... 11, 12

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) ........................................................................... 15

*Kehoe v. Pa. Dep't of Corr.*,
   No. 1:10-cv-1161, 2011 WL 2946713 (M.D. Pa. July 21, 2011) ........................ 8

*Oxford Health Plans, LLC v. Sutter*,
   569 U.S. ____, 133 S. Ct. 2064 (2013) .............................................. passim

*Reed Elsevier, Inc. v. Crockett*,
    734 F.3d 594 (6th Cir. 2013)....................................................................... passim

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ..................................................................................... passim

*Sunlight Elec. Contracting Co. v. Turchi*,
    918 F. Supp. 2d 392 (E.D. Pa. 2013) ................................................................ 20

*Vilches v. Travelers Cos.*,
    413 F. App'x 487 (3d Cir. 2011)....................................................................... 15

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) ........................................................................................... 9

## Statutes

28 U.S.C. § 2201(a)..................................................................................................... 8

## Rules

AAA Suppl. Rule 3 .................................................................................................... 17

Fed. R. Civ. P. 56(a)................................................................................................... 8

Fed. R. Civ. P. 56(b) .................................................................................................. 1

Chesapeake Appalachia, L.L.C. ("Chesapeake") seeks a declaration that this Court—not an arbitration Panel—should decide whether the Burketts may bring an arbitration on behalf of any putative class, as they are seeking to do before the American Arbitration Association ("AAA"). Accordingly, pursuant to Federal Rule of Civil Procedure 56, Chesapeake moves for summary judgment on Count I of its Complaint, which seeks a declaration judgment that this Court, not an AAA arbitration Panel, is to decide whether the Burketts may bring an arbitration on behalf of any putative class. Under Rule 56, when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law, a party may move for summary judgment upon commencement of the action. *See* Fed. R. Civ. P. 56(b).

Federal law establishes that courts, not arbitrators, should decide "gateway" questions like whether an arbitration may proceed on a class basis. There are no genuine issues of material fact that would prevent this Court from entering summary judgment in Chesapeake's favor on Count I of Chesapeake's Complaint.

This precise question on this same procedural posture was recently decided in *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594 (6th Cir. 2013) (attached hereto as Ex. 1). The *Reed Elsevier* court held that a court, not an arbitrator, should decide whether an arbitration may proceed on a class basis. The *Reed Elsevier* court held that given how fundamentally a "class" arbitration would alter the dynamics of an

arbitration, this question of "class arbitrability" is a "gateway" question that is presumptively for a court, not an arbitrator to decide.  In so holding, the court noted that the Supreme Court has made unambiguously clear that when it is presented with this question, it will hold that questions of class arbitrability should presumptively be decided by courts in the first instance.  Importantly, *Reed Elsevier* is the **only** circuit court case that has resolved this question since the Supreme Court's most recent discussion of this issue in *Oxford Health Plans, LLC v. Sutter*, 569 U.S. ____, 133 S. Ct. 2064 (2013).

Furthermore, although this issue has now been briefed in both this Court (in *Demchak Partners Limited Partnership v. Chesapeake Appalachia, L.L.C.*, No. 3:13-cv-02289-MEM (M.D. Pa.)) and in the AAA arbitration commenced by the Burketts (*Burkett v. Chesapeake Energy Corp.*, Arb. No. 14 115 00436 13), the Burketts can identify no "clear and unmistakable" evidence that would reverse the presumption in this case.[1]  The arguments they have raised to date are unsupported.

*First*, courts—most recently in *Reed Elsevier*—have **rejected** the argument that incorporation of the AAA Rules in a contract provides "clear and unmistakable" evidence that the parties agreed to submit class arbitrability to an

---

[1]     As explained in paragraphs 4-5 of Chesapeake's complaint and at pages 5-6 *infra*, Chesapeake has initiated this action to ensure that questions of class arbitrability are addressed by this Court, irrespective of the outcome of the pending motions in *Demchak*.

arbitrator.  Such a conclusion would be doubly wrong here given that numerous lessors the Burketts seek to represent do *not* have arbitration clauses that incorporate the AAA Rules.

*Second*, courts—again, most recently in *Reed Elsevier*—have also rejected the argument that a broadly-worded arbitration clause can supply clear and unmistakable evidence that the parties intended to submit class arbitrability to an arbitrator.

*Third*, the Burketts have argued that Chesapeake has waived this issue by contesting class arbitrability in the answer Chesapeake filed in the arbitration.  This is at odds with the Burketts' prior admissions that Chesapeake contests class arbitration.  It is also nonsensical—an arbitration answer ***contesting*** class arbitrability and making legal, not factual, representations cannot constitute affirmative ***evidence*** that Chesapeake agreed to submit questions of arbitrability to the Panel.  Indeed, the Burketts have cited no support for this theory—and it has been squarely and unanimously rejected by the Supreme Court.  *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995).

At bottom, federal law provides that the Court, not an arbitrator, should decide the "gateway" question of class arbitrability, and the Burketts can identify no "clear and unmistakable" evidence that Chesapeake agreed to submit this question to an arbitration Panel.

## PROCEDURAL HISTORY

In October 2012, Chesapeake was approached by a group of Pennsylvania landowners (referred to here as the "Demchak Group") who entered into oil and gas leases with Chesapeake, and who disputed Chesapeake's method of calculating gas royalties pursuant to a "Market Enhancement Clause" of their leases. The Demchak Group and Chesapeake engaged in many months of negotiation, and after a mediation overseen by Judge Edward Cahn, the Demchak Group and Chesapeake reached agreement on a class settlement that would apply to similarly-situated Pennsylvania lessors who do not opt out of the settlement. In accordance with federal law, the Demchak Group and Chesapeake submitted the settlement for court approval, and to initiate the process of providing formal notice of the proposed settlement to anyone who may be affected by it. That case is now pending in this Court. *See generally Demchak Partners Ltd. P'ship v. Chesapeake Appalachia, L.L.C.*, No. 3:13-cv-02289-MEM (M.D. Pa.) ("*Demchak*").[2]

Approximately six months after the Demchak Group and Chesapeake began negotiations, two landowners—Russell and Gayle Burkett—filed a putative "class"

---

[2]     The history of the negotiations leading to the *Demchak* settlement is detailed in the Memorandum in Support of Preliminary Approval of Class Action Settlement at 3-6, *Demchak* (M.D. Pa. Aug. 30, 2013), ECF No. 3-1.

arbitration with the AAA. *See* Ex. B.[3] The claims raised in the Burketts'
arbitration substantially overlap with the issues raised in *Demchak*. As the
Burketts acknowledge, Chesapeake disputes that the Burketts may proceed on a
class basis in their arbitration. *See* Burketts' Mot. to Intervene at 4, *Demchak*
(M.D. Pa. Sept. 12, 2013), ECF No. 25. Chesapeake has repeatedly explained that
the Burketts may opt out of the *Demchak* settlement and proceed individually in
the arbitration. *See, e.g.*, Chesapeake's Opp'n to Burketts' Mot. to Intervene at 7-
11, *Demchak* (M.D. Pa. Oct. 16, 2013), ECF No. 52. The Burketts, however,
refuse to opt out of the *Demchak* settlement—yet at the same time seek to proceed
with "class"-related proceedings in their arbitration.

The Burketts have raised arbitrability both in this Court (in *Demchak*) and in
their own AAA arbitration. In this Court, the Burketts have moved to intervene
and to compel arbitration, and have argued that the AAA arbitration Panel should
decide whether they may arbitrate on a class basis. *See generally* Burketts' Mot. to
Intervene; Burketts' Mem. in Supp. of Mot. to Intervene, *Demchak* (M.D. Pa. Oct.
2, 2013), ECF No. 40. Chesapeake has consistently explained that the Court, not
the AAA arbitration Panel, should decide class arbitrability, and that the Burketts
may not proceed in their arbitration on a class basis. *See* Chesapeake's Opp'n to

---

[3]     All exhibit references herein refer to exhibits attached to Chesapeake's
Statement of Undisputed Materials Facts ("SUMF") unless otherwise indicated.

Burketts' Mot. to Intervene at 15-21.  Both parties have also briefed the question of who decides class arbitrability in the Burketts' arbitration, *see* Exs. D, E, and F, and the arbitration Panel has set a hearing on this question for January 22, 2014. Although these class arbitrability questions have been presented to this Court in various procedural postures, Chesapeake now affirmatively seeks declaratory relief on these same issues because if the Court denies the Burketts' motion to intervene in *Demchak*, then Burketts' effort to compel arbitration will be moot.  Thus, as Chesapeake indicated in its December 4, 2013 Notice of Supplemental Authority at 2 n.1, *Demchak* (M.D. Pa. Dec. 4, 2013), ECF No. 62, Chesapeake has initiated this action to further ensure that the questions of who decides class arbitrability and whether the Burketts may proceed with a class arbitration are squarely presented to the Court.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

There are two undisputed factual predicates for this Motion.

*First*, Chesapeake and the Burketts entered into a lease that contains two separate arbitration clauses.  *See* SUMF ¶ 4.  The lease provides:

> In the event of a disagreement between Lessor and Lessee concerning this Lease, performance thereunder, or damages caused by Lessee's operations, the resolution of all such disputes shall be determined by arbitration in accordance with the rules of the American Arbitration Association.   All fees and costs associated with the arbitration shall be borne equally by Lessor and Lessee.

Ex. A at 2; SUMF ¶ 5.  The addendum to the lease provides:

> Any claim, controversy or dispute arising between the parties which relate in anyway, directly or indirectly, to this Lease (a "Dispute") will be submitted to and finally resolved by, binding arbitration.  There shall be three disinterested arbitrators, one thereof to be appointed by Lessor, one by the Lessee and the third by the two so appointed as aforesaid, and the award of such collective group shall be final and conclusive.  Arbitration proceedings hereunder shall be conducted at the county seat of the county where the leased premises is located. Lessee shall pay all Lessor's costs and fees, including reasonable attorney's fees incurred by Lessor in connection with any Dispute or Arbitration in which Lessor prevails.

Ex. A at Addendum ¶ 11; SUMF ¶ 6.

*Second*, the Burketts initiated their putative "class" arbitration based on their lease.  *See* SUMF ¶ 7.  The Burketts seek to represent a class of "all others similarly situated" within Pennsylvania.  *See* Ex. B; SUMF ¶ 9.

## STATEMENT OF QUESTIONS

1.  Whether this Court should decide whether the Burketts may proceed on a "class" basis in their arbitration.

2.  Whether the Burketts lack "clear and unmistakable" evidence that Chesapeake agreed to submit "class arbitrability" to the *Burkett* arbitrators.

## ARGUMENT

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

7

matter of law." *See* Fed. R. Civ. P. 56(a); *see also Gans v. Mundy*, 762 F.2d 338, 340-41 (3d Cir. 1985); *Kehoe v. Pa. Dep't of Corr.*, No. 1:10-cv-1161, 2011 WL 2946713, at *1-2 (M.D. Pa. July 21, 2011).

## I.   "CLASS ARBITRABILITY" IS A "GATEWAY" ISSUE THAT MUST BE DECIDED BY THE COURT.

In this Motion, Chesapeake seeks a declaration pursuant to 28 U.S.C. § 2201(a) that whether the Burketts may prosecute their arbitration on a class basis is for the Court, not the arbitration Panel, to decide.

The analysis of who decides arbitrability, including class arbitrability, begins with well-established principles that the Supreme Court has recently and repeatedly affirmed.  Arbitration is a matter of consent, not coercion: a party may not be coerced into arbitrating in a manner to which it did not agree.  *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).  This basic principle dovetails with another hornbook rule of arbitration: absent clear and convincing evidence to the contrary, arbitrability is for courts to decide.  *See First Options*, 514 U.S. at 944-47.  Because a "class" arbitration fundamentally modifies the scope and procedures of an arbitration, class arbitrability is plainly a "gateway" question of arbitrability.  *Reed Elsevier*, 734 F.3d at 598-99.  Thus, absent clear and unmistakable evidence that overrides this presumption, the Court (not an arbitration Panel) should decide whether the Burketts may proceed on a "class" basis in their arbitration.  *Id.*

**A.      Class Arbitration Is a Matter of Consent, Not Coercion.**

The Supreme Court has repeatedly explained "the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen*, 559 U.S. at 681 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Parties cannot be coerced to arbitrate issues that they did not agree to arbitrate. The "no coercion" principle applies with even greater force in the class action context. The Supreme Court has repeatedly—and recently—pointed out the exceptional nature of the class action device: "[it] is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)); *see also Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (same). Parties have no ***right*** to a class action—the fact that Congress carved out an exception by establishing Rule 23 in federal actions does not "evidence . . . an entitlement" to the class action procedure in arbitration. *See Am. Express*, 133 S. Ct. at 2309-10.

Given the exceptional nature of class actions generally and the rule that arbitration is a matter of consent, not coercion, recent Supreme Court decisions have treated "class arbitration" with disfavor. The Supreme Court has voiced a deep suspicion of the very concept of class arbitration given that the underlying premise of arbitration (speed and informality) is at odds with class action litigation,

which requires formal procedural rigor to ensure the protection of due process rights of parties and non-parties. That is why class arbitrations were impermissible historically and are still disfavored today. *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1751-52 (2011) ("class arbitration is a relatively recent development" and "[a]rbitration is poorly suited to the higher stakes of class litigation") (citation and internal quotation marks omitted). Indeed, the "liberal federal policy favoring arbitration," *see id.* at 1745 (citation and internal quotation marks omitted), "does ***not*** extend to 'class' arbitrations," *AT&T Mobility LLC v. Smith*, No. 11-cv-5157, 2011 WL 5924460, at *6 (E.D. Pa. Oct. 7, 2011) (citing *Concepcion*, 131 S. Ct. at 1748).[4]

In *Concepcion*, the Supreme Court discussed the many disadvantages of class arbitration, including that it "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." 131 S. Ct. at 1751. The Court also noted that class arbitration raises due process concerns, *see id.* at 1751-52, and procedural protections of federal appeals are far less certain, *id.* at 1752. Thus, the Supreme Court has unequivocally held that "***[c]lass arbitration*** is a matter of consent" and that "[a]n arbitrator may employ class procedures only if the parties have authorized them." *Oxford Health,* 133 S. Ct. at 2066 (citing *Stolt-*

---

[4]    All emphasis added unless otherwise indicated.

*Nielsen*, 559 U.S. at 684); *see also Stolt-Nielsen*, 559 U.S. at 684 ("[A] party may not be compelled . . . to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so.") (emphasis in original).

### B.    "Class Arbitrability" Is for the Court to Decide.

"'[Q]uestion[s] of arbitrability' . . . are presumptively for courts"—not arbitrators—"to decide." *See Oxford Health*, 133 S. Ct. at 2068 n.2 (citing *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion)). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *See First Options*, 514 U.S. at 944 (alterations in original) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "Class arbitrability"—*i.e.*, whether the Burketts may proceed on a class basis in their arbitration—presents a substantive question of arbitrability for a court to decide.  The only circuit court that has addressed this specific question since the Supreme Court's recent ruling in *Oxford Health* has squarely held that class arbitrability is a gateway matter for courts, not arbitrators. *Reed Elsevier*, 734 F.3d at 598-99.

The court's conclusion in *Reed Elsevier* stems from the application of the black-letter principles discussed above and flows from recent Supreme Court precedent.  The Supreme Court first weighed in on the concept of class arbitration in *Bazzle*.  The *Bazzle* Court was presented with the same threshold question

presented here: whether a court or an arbitrator should decide whether an arbitration could proceed on a class basis. At the time, neither outcome attracted a majority—a plurality of the Court concluded that an arbitrator, not a court, should decide the issue. 539 U.S. at 452-53.

Seven years later, class arbitration arose again before the Supreme Court in *Stolt-Nielsen*. In *Stolt-Nielsen*, the Court held that under the FAA, class arbitration cannot be imposed absent affirmative evidence that the parties agreed to permit class arbitration—the absence of a class action waiver did not support an inference that the parties had agreed to class arbitration. 559 U.S. at 684-87. The Court could not decide the antecedent question of whether a court or an arbitrator should decide class arbitrability because the parties had agreed that the arbitrator would decide it. The Court nonetheless pointedly raised the issue to point out that *Bazzle* had ***not*** resolved this question definitively:

> [T]he parties appear to have believed that the judgment in *Bazzle* requires an arbitrator, not a court, to decide whether a contract permits class arbitration . . . . In fact, however, only the plurality decided that question.

*Id.* at 680.

Although the *Stolt-Nielsen* Court could not resolve the question based on the procedural posture before it, the Court's opinion shows that a majority would have held that courts, not arbitrators, should decide class arbitrability. *See Reed Elsevier*, 734 F.3d at 598 ("[T]he Court has given every indication, short of an

outright holding, that classwide arbitrability is a gateway question rather than a subsidiary one.") (citing *Stolt-Nielsen*, 559 U.S. at 685).   *Stolt-Nielsen* observed that class arbitrations negate the benefits of arbitration:

> In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes.   But the relative benefits of class-action arbitration are much less assured, giving reason to doubt the parties' mutual consent to resolve disputes through class-wide arbitration. *Cf. First Options*, *supra*, at 945, 115 S.Ct. 1920 (noting that "one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate" contrary to their expectations).

559 U.S. at 685-86 (internal citations omitted).

The Court went on to explain "some of the fundamental changes brought about by the shift from bilateral arbitration to class-action arbitration":

- "An arbitrator chosen according to an agreed-upon procedure, no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties."

- "Under the Class Rules, 'the presumption of privacy and confidentiality' that applies in many bilateral arbitrations 'shall not apply in class arbitrations,' thus potentially frustrating the parties' assumptions when they agreed to arbitrate."

- "The arbitrator's award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well."

- "And the commercial stakes of class-action arbitration are comparable to those of class-action litigation, even though the scope of judicial review is much more limited."

*Id.* at 686-87 (internal citations omitted). The Court then **rejected** the argument that the availability of class arbitration is "merely [about] what 'procedural mode'" is available to adjudicate a claim. *Id.* at 687; *see also Reed Elsevier*, 734 F.3d at 598-99.

The *Bazzle* and *Stolt-Nielsen* cases led to *Oxford Health*. In *Oxford Health*, the issue was what standard of review applies to an arbitrator's class arbitrability determination where—unlike here—the parties agree that the arbitrator, not a court, is to decide class arbitrability. Although the Supreme Court did not resolve who decides class arbitrability, it specifically stated that it "would face a different issue" if it were faced with the argument "that the availability of class arbitration is a so-called 'question of arbitrability.'" 133 S. Ct. at 2068 n.2. The Court went on to note that questions of arbitrability "are presumptively for courts to decide" absent clear and unmistakable evidence to the contrary. *Id.*

Since *Oxford Health*, the only circuit court to rule on this issue has squarely held that **courts**, not arbitrators, are to decide class arbitrability absent clear and unmistakable evidence to the contrary. In *Reed Elsevier*, the Sixth Circuit analyzed the interplay of *Bazzle*, *Stolt-Nielsen*, and *Oxford Health*, observing that the Supreme Court "has given every indication, short of an outright holding, that

14

classwide arbitrability is a gateway question" for a court to decide.  734 F.3d at 598.  The court explained that the Supreme Court "has characterized the differences between bilateral and classwide arbitration as 'fundamental.'"  *Id.* (citing *Stolt-Nielsen*, 559 U.S. at 686; *Concepcion*, 131 S. Ct. at 1750).  Citing and quoting *Stolt-Nielsen*, 559 U.S. at 685-87, and *Concepcion*, 131 S. Ct. at 1751, the court went on to explain those differences, including:

- "arbitration's putative benefits—'lower costs, greater efficiency and speed,' et cetera—'are much less assured' with respect to classwide arbitration, 'giving reason to doubt the parties' mutual consent' to that procedure";

- "'the commercial stakes of class-action arbitration are comparable to those of class-action litigation' . . . 'even though the scope of judicial review is much more limited'"; and

- "there are the due-process concerns: once an arbitration is expanded classwide, '[t]he arbitrator's award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights of absent parties as well.'"

*Id.*  The *Reed Elsevier* court thus concluded that "whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved 'for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Id.* at 599 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

Before *Oxford Health*, some courts, like the Third Circuit's non-precedential opinion in *Vilches v. Travelers Cos.*, 413 F. App'x 487, 492 & n.3 (3d Cir. 2011), held that the arbitrator should decide class arbitrability.  Those courts, however, do not accurately state the law as it stands today.  Indeed, other pre-*Oxford Health*

courts correctly held that class arbitrability should be decided by courts, not arbitrators. *See, e.g., Corrigan v. Domestic Linen Supply Co.*, No. 12 C 0575, 2012 WL 2977262, at *4-5 (N.D. Ill. July 20, 2012) ("It is for courts, not arbitrators, to decide whether class claims are able to proceed."). *Oxford Health* and *Reed Elsevier*, however, confirm that the correct reading is that class arbitrability is "presumptively for courts to decide." 133 S. Ct. at 2068 n.2; *see also Reed Elsevier*, 734 F.3d at 599.

## II. THERE IS NO "CLEAR AND UNMISTAKABLE" EVIDENCE THAT CHESAPEAKE AGREED TO SUBMIT CLASS ARBITRABILITY TO THE ARBITRATION PANEL.

To date, the Burketts have made three primary arguments to support their argument that the Panel, not the Court, should decide class arbitrability. None provides "clear and unmistakable" evidence that Chesapeake agreed to submit class arbitrability to the Panel.

### A. Incorporating AAA Rules Is Not "Clear and Unmistakable" Evidence That Chesapeake Agreed to Submit Class Arbitrability to the Panel.

The fact that the Burketts' lease incorporates the AAA Rules does not provide "clear[] and unmistakabl[e]" evidence that Chesapeake agreed to submit class arbitrability to the Panel. *See AT&T Techs.*, 475 U.S. at 649. Courts to have addressed this specific argument have expressly rejected it. *See Reed Elsevier*, 734 F.3d at 599-600. To be sure, some courts have held that contracts incorporating

the AAA Rules provide evidence that the parties agreed to submit arbitrability to an arbitrator in a *bilateral* arbitration, but such cases are inapposite here. The AAA's Supplementary Rules for *Class* Arbitration—unlike the AAA Rules governing normal bilateral arbitration—expressly provide that "[i]n construing the applicable arbitration clause, the arbitrator shall *not* consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis." AAA Suppl. Rule 3; *see also Reed Elsevier*, 734 F.3d at 599-600. In fact, even courts holding that incorporating the AAA Rules is clear and unmistakable evidence that the parties intended to arbitrate *bilateral* arbitrability have held in the *class* arbitration context that "[i]t is for courts, not arbitrators, to decide whether class claims are able to proceed." *Corrigan*, 2012 WL 2977262, at *4 ("It is the job of the courts to interpret what parties to a contract have agreed upon, and this includes whether the parties agreed to class arbitration.") (citing *Stolt-Nielsen*, 130 S. Ct. at 1773).

Incorporating the AAA Rules in the Burketts' lease does not provide "clear and unmistakable" evidence that the parties intended to submit class arbitrability to the Panel for another reason: many of the lessors the Burketts seek to represent have leases that do *not* incorporate the AAA Rules. *See* Ex. G ¶ 12. Incorporating the AAA Rules into *some* leases cannot provide "clear and unmistakable" evidence

that Chesapeake agreed to submit class arbitrability to the Panel when the putative class contains numerous leases that do not incorporate the AAA Rules.

**B.     The Breadth of the Arbitration Clause Is Not Clear and Unmistakable Evidence.**

The Burketts have also incorrectly argued that the breadth of the arbitration clause shows that the parties agreed to submit class arbitrability to the arbitrator. Again, the Sixth Circuit's holding in *Reed Elsevier* is directly on point.   The arbitration clause at issue in *Reed Elsevier* provided that "any controversy, claim or counterclaim . . . arising out of or in connection with this Order . . . will be resolved by binding arbitration . . . ." 734 F.3d at 599.  Similarly, the Burketts' arbitration clause provides that "[i]n the event of a disagreement between Lessor and Lessee concerning this lease, . . . the resolution of all such disputes shall be determined by arbitration . . . ."  SUMF ¶ 5 (quoting Ex. A at 2); *see also id.* ¶ 6 (addendum similarly provides that "'[a]ny claim, controversy or dispute arising between the parties which relate in anyway, directly or indirectly to this Lease . . . will be submitted to and finally resolved by[] binding arbitration'") (quoting Ex. A at Addendum ¶ 11).  Thus, the arbitration clause at issue in *Reed Elsevier* was just as broad as the arbitration clause at issue here—and the court held that "[t]his language does not clearly and unmistakably assign to an arbitrator the question whether the agreement permits classwide arbitration." 734 F.3d at 599.  Moreover, as the court held, the language specifically tying disputes to the contract at issue—

"this Order" in *Reed Elsevier*; "this Lease" in this case—further demonstrates that the scope of the arbitration clause is limited to the contract at issue—"as opposed to other [lessors' leases]." *See id.*

### C.   Chesapeake Did Not Waive Its Right to Have Class Arbitrability Decided by a Court.

Recognizing that they lack "clear and unmistakable" evidence that Chesapeake agreed to submit class arbitrability to the Panel, the Burketts have argued in their arbitration that Chesapeake waived its right to have class arbitrability decided by a court.

To begin, this argument is inconsistent with the Burketts' prior admissions in this Court.   Since the very beginning of the arbitration, Chesapeake has contested that the Burketts may proceed on a class basis.   *See* Ex. C at 2-4.   Until recently, the Burketts have plainly acknowledged that Chesapeake contests class arbitrability.   *See* Burketts' Mot. to Intervene at 4 ("Chesapeake has consented to individualized arbitration but ***contests*** class arbitration.").   Only recently, in an attempt to manufacture "evidence" that Chesapeake agreed to submit class arbitrability to the arbitration Panel, have the Burketts argued to the contrary.

Regardless, Chesapeake's arbitration answer does not constitute "clear and unmistakable" evidence of its agreement to submit class arbitrability to the Panel, and does not otherwise waive the question of who decides class arbitrability.   A litigation pleading is not a binding judicial admission unless it makes a statement

of *fact*. *Sunlight Elec. Contracting Co. v. Turchi*, 918 F. Supp. 2d 392, 400 n.8 (E.D. Pa. 2013). Chesapeake's alleged admission that the AAA Supplementary Rules for Class Arbitration govern this dispute is not a *factual* admission—it is at best a statement of legal theory and cannot constitute clear and unmistakable evidence of an agreement to submit class arbitrability to the Panel.

The Burketts have cited no support for their theory that Chesapeake's answer can be interpreted as a concession of any sort. Indeed, the Supreme Court unanimously rejected this argument, based on very similar facts, in *First Options*. In *First Options*, the Court held that a party's "written memorandum objecting to the arbitrators' jurisdiction" filed in the arbitration did not constitute "clear and unmistakable" evidence because "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue." 514 U.S. at 946. This is the precise situation presented here. Chesapeake submitted an answer contesting that this case may proceed as a class arbitration—that is not "a clear willingness to arbitrate that issue." *Id.* Such statements are insufficient to overcome courts' "hesitat[ion] to interpret silence or [even] ambiguity on the 'who should decide arbitrability' point." *Id.* at 945.

**CONCLUSION**

For the foregoing reasons, Chesapeake respectfully requests that the Court grant Chesapeake's Motion and enter summary judgment in Chesapeake's favor on Count I of the Complaint.

DATED: December 23, 2013          Respectfully submitted,

*/s/ Daniel T. Brier*          
Daniel T. Brier
Myers, Brier & Kelly LLP
425 Spruce St. Suite 200
Scranton, PA 18501
Tel: (570) 342-6100
Fax: (570) 342-6147

Daniel T. Donovan (*pro hac vice*
    forthcoming)
Ragan Naresh (*pro hac vice*
    forthcoming)
Kirkland & Ellis LLP
655 Fifteenth Street, NW
Washington, DC 20005
Tel: (202) 879-5000
Fax: (202) 879-5200

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2013, a copy of the foregoing was filed electronically.   Notice of this filing will be sent to all parties who have appeared in this action via the Court's electronic filing system.   Parties may access this filing through the Court's system.

A copy of this filing was also served via electronic mail and U.S. mail upon known counsel for Defendants, as follows:


Douglas A. Clark, Esq.
THE CLARK LAW FIRM, P.C.
1563 Main Street
Peckville, PA 18452
clarkesquire@comcast.net

Gerard M. Karam, Esq.
Mazzoni, Karam, Petorak & Valvano
Suite 201, Bank Towers
321 Spruce Street
Scranton, PA 18503
gkaram18@msn.com

Francis P. Karam, Esq.
Francis P. Karam, P.C.
12 Desbrosses Street
New York, NY 10013
frank@fkaramlaw.com

Rachel Schulman, Esq.
Rachel Schulman, Esq. PLLC
14 Bond Street, Suite 143
Great Neck, NY 11021
rachel@schulmanpllc.com


*/s/ Daniel T. Brier*
Counsel

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to LR 7.8(b)(2) that this filing does not exceed 5,000 words. Excluding the caption, Table of Contents, Table of Authorities, and signature blocks, this filing is 4,844 words. The word count was conducted on December 23, 2013 using the word count feature of Microsoft Word.

/s/ Daniel T. Brier
Counsel