# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

**CHESAPEAKE APPALACHIA, LLC,** :

    **Plaintiff** : **CIVIL ACTION NO. 3:13-3073**

    **v.** : **(MANNION, J.)**

**RUSSELL E. BURKETT and** :
**GAYLE BURKETT,**
                   :

    **Defendants** :

                   :

## MEMORANDUM

Pending before the court is the plaintiff's motion for summary judgment on Count I of this declaratory judgment action. (Doc. 4). Based upon the court's review of the motion and related materials, the plaintiff's motion will be denied.

By way of relevant background, on April 1, 2013, the defendants, Russell and Gayle Burkett, filed a putative class arbitration on behalf of themselves and other Pennsylvania landowners before the American Arbitration Association, ("AAA"), alleging claims related to oil and gas leases entered into with the plaintiff. See Burkett v. Chesapeake Energy Corp., AAA No. 14 115 00436 13. The issue arose as to who must decide class arbitrability, the court or the AAA panel. The Burketts argued that the matter should be decided by the AAA panel. Chesapeake argued that the court, not an arbitrator, should decide the issue of class arbitrability and, as such, the

Burketts should not be allowed to proceed with their arbitration on a class basis[1].

On December 20, 2013, Chesapeake filed this action for declaratory and injunctive relief in which it seeks to have the court issue two declarations: (1) that the court, not an arbitrator, is to decide class arbitrability pursuant to the Burketts' lease, (referred to as the "who decides" issue); and (2) that class arbitration is, in fact, not available pursuant to the Burketts' lease, (referred to as the "clause construction" issue). (Doc. 1).

On December 23, 2013, Chesapeake filed the instant motion for summary judgment on Count I in which it seeks a declaration that the court, not an arbitrator, must decide class arbitrability and an order enjoining the Burketts from continuing to submit this issue to the AAA Panel. (Doc. 4). A brief in support of Chesapeake's motion for summary judgment was filed the same day. (Doc. 5). On January 10, 2014, the Burketts filed a brief in opposition to the motion for summary judgment arguing only that the motion for summary judgment was premature and that additional discovery was necessary to address the parties' intent to have the arbitrators conduct a class arbitration. (Doc. 18). Chesapeake filed a reply brief on January 24, 2014. (Doc. 24).

---

[1]Chesapeake does not oppose the Burketts proceeding with their arbitration on an individual basis.

On January 28, 2014, the AAA panel issued a ruling in the putative class arbitration in which it indicated that "the Panel has determined, on the basis of written submissions by the parties, that it has the authority to decide in the first instance whether this action can proceed as a class arbitration." The AAA panel then ordered briefing on the clause construction issue. (Doc. 25, Ex. 2). A hearing on the matter was held on March 13, 2014.

On July 31, 2014, Chesapeake filed a notice of supplemental authority in support of its motion for summary judgment citing to the Third Circuit's precedential opinion in Opalinski v. Robert Half Int'l Inc.,       F.3d     , 2014 WL 3733685 (3d Cir. July 30, 2014). (Doc. 30). The Burketts filed a supplemental response to the plaintiff's motion for summary judgment on August 21, 2014[2]. On September 4, 2014, Chesapeake filed a second reply brief in support of its motion for summary judgment. (Doc. 35).

On September 12, 2014, the AAA panel issued a "Partial Final Clause Construction Award" in the Burketts' case. (Doc. 36). In its decision, the AAA panel reconsidered whether it has the authority to determine class arbitrability in the first instance in the wake of the Third Circuit's opinion in Opalinski and,

---

[2]By order dated July 23, 2014, the court denied the defendants' motion for discovery and dismissed as moot their motion for a stay pending discovery. (Doc. 29). As a result of that ruling, the court directed the defendants to file a supplemental response to the plaintiff's motion for summary judgment addressing the impact of the Opalinski decision.

if it does, whether the arbitration clause in the Burketts' case permits their arbitration to proceed on a class basis. As to the first issue, the AAA panel reaffirmed its initial decision concluding that it has the authority to decide class arbitrability and finding the Third Circuit's opinion in Opalinski to be distinguishable. As to the second issue, the AAA panel concluded that the parties' arbitration agreement did not preclude class treatment. Under Rule 3 of the Supplementary Rules for Class Actions of the American Arbitration Association, the AAA panel stayed its award for thirty days to permit judicial review.

In considering Chesapeake's pending motion for summary judgment, summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Turner v. Schering–Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).

The only issue before this court by way of Chesapeake's motion for summary judgment is who decides whether the Burketts may arbitrate on a class basis, the court or the AAA panel. The United States Supreme Court has yet to hold whether it is the court or the arbitrator to interpret an

4

arbitration agreement in deciding whether a class arbitration is authorized. See Oxford Health Plans LLC v. Sutter,     U.S.    , 133 S.Ct. 2064, 2068 n.2 (2013) ("[T]his Court has not yet decided whether the availability of class arbitration is a question of arbitrability.). However, during the pendency of the instant action, on July 30, 2014, the United States Court of Appeals for the Third Circuit issued its precedential opinion in Opalinski, supra, addressing the issue. Chesapeake argues, and this court agrees, that the holding in Opalinski is binding upon this court. However, the court does not arrive at the same conclusion as Chesapeake in its application of the holding in Opalinski to this case.

In Opalinski, the plaintiffs brought an action against their employer on behalf of themselves and others pursuant to the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. §291, et seq., claiming that their employer failed to pay them overtime and improperly classified them as overtime-exempt employees. The employer moved to compel bilateral arbitration. While the lower court granted the motion in part by compelling the parties to arbitration, it held that the issue of bilateral versus classwide arbitration was a matter for an arbitrator to decide. The matter proceeded to arbitration, at which an arbitrator issued a partial award and ruled that the employment agreements permitted classwide arbitration. The employer moved the district court to vacate the arbitrator's order, which the district court declined to do. The employer

appealed to the Third Circuit.

On appeal, the sole issue was whether, in the context of an otherwise silent contract, the availability of classwide arbitration should be decided by an arbitrator or by the district court. The court noted the two-step process involved in making its determination. First, the court considered whether the availability of classwide arbitration is a "question of arbitrability." If it was a "question of arbitrability", then the court found that it would be presumed that the issue is "for judicial determination unless the parties clearly and unmistakably provide otherwise." If the availability of classwide arbitrability was not a "question of arbitrability" then the court found it would presumptively be for the arbitrator to resolve.

Ultimately, the Third Circuit held that "[b]ecause of the fundamental differences between classwide and individual arbitration, and the consequences of proceeding with one rather than the other, we hold that the availability of classwide arbitration is a substantive 'question of arbitrability' to be decided by a court absent clear agreement otherwise." Id. at *1. See also Id. at *9 ("We now hold that whether an agreement provides for class arbitration is a 'question of arbitrability' to be decided by the District Court.").

The Third Circuit's decision in Opalinski followed closely the Sixth Circuit's decision in Reed Elsevier, Inc. v. Crockett, 734 F.3d 594 (6th Cir. 2013), in which that court also held that the question of whether an arbitration

agreement permits classwide arbitration is a gateway matter reserved for judicial determination unless the parties clearly and unmistakably provide otherwise. Id. at 599. In Reed, the court found that the language of the agreement did not clearly and unmistakably assign to an arbitrator the question of whether the agreement permitted classwide arbitration. The court found that the agreement was, at best, silent or ambiguous as to the issue and that was not enough to overcome the presumption that the issue should be decided by the court. Id.

Now unable to challenge that class arbitrability is a matter presumptively for the court in the wake of Opalinski, the Burketts argue in this case that clear and unmistakable evidence exists that the parties intended the AAA Panel to determine the issue of class arbitrability. As discussed above, Opalinski has held that the "who decides" issue is a question of arbitrability and that "[i]t is presumed that courts must decide questions of arbitrability *'unless the parties clearly and unmistakably provide otherwise.'"* Id. at *7 (emphasis added) (quoting [Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)](#)). To overcome this presumption, the Third Circuit has found that express contractual language which unambiguously delegates the question of arbitrability to the arbitrator must be shown. Id. (citing [Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 280-81 (3d Cir. 2004)](#)). Contractual language which is silent on the issue or which is

ambiguous is insufficient. Id. (citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 154-55 (3d Cir. 2001)).

Chesapeake argues that the agreement with the Burketts is "silent" with respect to class arbitration in that there is no express reference to such in the arbitration provision and therefore there is no clear and unmistakable evidence that the parties intended to have the arbitrators decide the issue of class arbitrability. As to this argument, however, just as "[t]he Supreme Court has never held that a class arbitration clause must explicitly mention that the parties agree to class arbitration in order for a decisionmaker to conclude that the parties consented to class arbitration, Yahoo! Inc. v. Iverson, 836 F.Supp.2d 1007, 1011 (N.D. Cal. 2011) (the failure to mention class arbitration in the arbitration clause itself does not necessarily equate with the 'silence[3]' discussed in Stolt-Nielsen) (quoting Vazquez v. ServiceMaster Global Holding Inc., 2011 WL 2565574 at *3 n.1 (N.D. Cal. June 29, 2011 (quoting Stolt-Nielsen, 130 S.Ct at 1768)), neither does the parties' failure to put in the exact words that they intended to have an arbitrator decide the issue of class arbitrability bar the court from finding that there is clear and unmistakable evidence that they intended to have the arbitrator so find.

---

[3]The Supreme Court explained in Stolt-Nielsen that it used the term "'silent' in the sense that [the parties] had not reached any agreement on the issue of class arbitration," . . . "not simply . . . that the clause made no express reference to class arbitration." Stolt-Nielsen, 130 S.Ct. 1766, 1768.

Instead, the court must examine the agreement to determine if, when construed under the relevant law, the agreement demonstrates a clear intention that the arbitrators have the authority to determine issues of arbitrability. See Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir. 2005).

The court turns then to the lease at hand which provides, in relevant part:

> In the event of a disagreement between Lessor and Lessee concerning this Lease, performance thereunder, or damages caused by Lessee's operations, the resolution of all such disputes shall be determined by arbitration in accordance with the rules of the American Arbitration Association. All fees and costs associated with the arbitration shall be borne equally by Lessor and Lessee.

(Doc. 6, Ex. A).

An addendum to the lease provides, in part:

> Any claim, controversy or dispute arising between the parties which relate in any way, directly or indirectly, to this Lease (a "Dispute") will be submitted to and finally resolved by, binding arbitration. There shall be three disinterested arbitrators, one thereof to be appointed by Lessor, one by the Lessee and the third by the two so appointed as aforesaid, and the award of such collective group shall be final and conclusive. Arbitration proceedings hereunder shall be conducted at the county seat of the county where the leased premises is located. Lessee shall pay all Lessor's costs and fees, including reasonable attorney's fees incurred by Lessor in connection with any Dispute or Arbitration in which Lessor prevails.

(Id.).

The Burketts argue that their lease provisions incorporate the rules of the AAA and that at the time the lease was signed, July 31, 2008, the AAA had adopted the Supplementary Rules for Class Arbitration (effective October 8, 2003). By incorporating the AAA rules by reference into their lease, it is as if those rules were set forth in the Burketts' lease in full.

Rule 7(a) of the AAA rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Moreover, Rule 8 of the AAA rules provides that "[t]he arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties." Supplementary Rule 1(a), provides "[t]hese [Supplementary Rules] shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the American Arbitration Association ("AAA") where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules." Supplementary Rule 3 provides that ". . . the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." Supplementary Rule 3 also provides, however, that "[i]n construing the applicable arbitration clause, the arbitrator shall not consider

10

the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis."

Upon review, there are no exceptions or waivers provided for in the Burketts' lease as to the applicability of the AAA rules, including those above, and it is upon these provisions that the Burketts rely, in large part, to argue that their lease provides clear and unmistakable evidence that the parties intended for an arbitrator to decide the issue of class arbitrability. As discussed herein, a number of courts have found that when an agreement incorporates by reference rules giving the arbitrator power to rule on his or her own jurisdiction, the parties' incorporation of those rules demonstrates a clear and unmistakable intent to delegate issues of arbitrability to the arbitrator. (See citations *infra*).

The AAA panel appointed to the Burketts' case relied, in part, upon the incorporation of the AAA rules in finding that it had the authority to decide the "who decides" question in the first instance:

> The "who decides" question then depends completely upon the language of the Agreement and the principles of contract interpretation. The agreement in the case at bar is clear. It requires that all disputes be determined in accordance with the rules of the American Arbitration Association. In 2008, when the Burketts' lease was signed, the AAA rules included the Supplementary Rules for Class Arbitrations. See Supplementary Rule 1(a) ("These [Supplementary Rules] shall apply to any dispute arising out of an agreement that provides for arbitration

pursuant to any of the rules of the American Arbitration Association ("AAA") where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules.")

Rule 3 of the Supplementary Rules authorizes this Panel to decide arbitrability: "Upon appointment, *the arbitrator* shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the 'Clause Construction Award.')' To be sure, Rule 3 also provides that the "existence" of a class arbitration procedure should not be considered by the arbitrator as a factor in favor of or against permitting arbitration. But the *existence* of Rule 3's provisions is not the basis for this decision on "who decides" class arbitrability. It is the parties' specific reference to the AAA rules in the Agreement, which in 2008 necessarily included the Supplementary Rules for Class Arbitrations.

(Doc. 36, pp. 6-7) (footnotes omitted) (emphasis in original).

The AAA panel went on to state:

Other courts within the Third Circuit have held that incorporation of these rules is "clear and unmistakable evidence" that the parties agreed to submit arbitrability questions to the arbitrators. *See e.g. Ins. Newsnet.com, Inc. v. Pardine*, 1:11-cv-00286, 2011 WL 3423081, at *3 (M.D.Pa. August 4, 2011); *Way Services Inc. v. Adeco North America, LLC*, No. 06-cv-2109, 2007 WL 1775393, at *3 (E.D.Pa. June 17, 2007) (same); *see also MACTEC Dev. Corp. v. EnCap Golf Holdings, LLC (In re EnCap Golf Holdings, LLC)*, No. 08-5178, 2009 WL 2488266, at *4 (D.N.J. Aug. 10, 2009) ("the fact that the Lexington Policy incorporates the AAA Construction Rules and that Rule 8 of these rules provides that the arbitrator shall have the authority to determine jurisdiction constitutes clear and unmistakable evidence"). Likewise, other circuit courts have agreed. *See e.g. In Contec v. Remote Solution Co.*, 398 F.3d 205, 211 (2d Cir. 2005).

(Id.).

Indeed, virtually every circuit court to have considered the issue has found that incorporation of the AAA rules into an agreement constitutes clear and unmistakable evidence that the parties agreed to arbitrate issues of arbitrability. See Oracle Am., Inc. v. Myriad Grp. A.G., 724 F.3d 1069, 1074 (9th Cir. 2013); Petrofac, Inc. v. DynMcDermott Petroleum Operations Co., 687 F.3d 671, 675 (5th Cir. 2012) (incorporation of AAA rules, which provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement," presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability); Fallo v. High-Tech Inst., 559 F.3d 874, 878 (8th Cir. 2009) ("[W]e conclude that the arbitration provision's incorporation of the AAA Rules . . . constitutes a clear and unmistakable expression of the parties intent to leave the question of arbitrability to an arbitrator."); Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366, 1373 (Fed. Cir. 2006) (same); Terminix Int'l Co. v. Palmer Ranch LP, 432 F.3d 1327, 1332 (11th Cir. 2005) (same); Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir. 2005). But see Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775, 777 & n.1, 780 (10th Cir. 1998).

Chesapeake argues that none of the cases cited by the Burketts or the AAA panel address the issue of who decides class arbitrability and are

therefore distinguishable from the instant matter. While it is true that the above cases do not address the exact issue presented in this action[4], the above cases still establish that by incorporating into an agreement the AAA rules, which give the arbitrator authority to decide his or her own jurisdiction, the arbitrator is thereby vested with the authority to decide questions of arbitrability. See Oracle America, Inc. v. Myriad Group A.G., 724 F.3d 1069, 1073 (9th Cir. 2013). The Third Circuit has now decided that the issue of "who decides" class arbitrability is a question of arbitrability.

Chesapeake further argues that incorporation of the AAA rules in this case has no effect as the agreement references only the bilateral AAA rules, and not the Supplementary Rules which apply to class actions. With respect to this argument, the parties explicitly agreed to adopt the AAA rules when they entered into their agreement. Although the AAA rules do not contain class arbitration procedures, such procedures are provided for in the Supplementary Rules for Class Arbitration, which were enacted in October 2003. See Stolt-Nielsen, 130 S.Ct. at 1765 (discussing the development of the Supplementary Rules). By their terms, the Supplementary Rules apply "to

---

[4]Although not binding authority, the court notes that the court in Yahoo!, found that incorporation by reference to the AAA Supplementary Rules constitutes a clear and unmistakable agreement to have the arbitrator decide questions regarding the availability of class-wide claims. Yahoo!, 836 F.Supp.2d at 1012.

any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the American Arbitration Association ("AAA") where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules." Suppl. R. 1(a). Further, consent to any of the AAA's substantive rules also constitutes consent to the Supplementary Rules and, if a dispute that otherwise would be arbitrated under the AAA rules involves a purported class, then the proceeding is governed by both the AAA rules and the AAA Supplementary Rules for Class Arbitrations. See Bergman v. Spruce Peak Realty, LLC, 2011 WL 5523329, at *3 (D.Vt. Nov. 14, 2011) (relying upon Supplementary Rules when referring class arbitration issue to the arbitrator, where parties agreed to "the Commercial Arbitration Rules of the AAA"); S. Commc'ns Servs., Inc. v. Thomas, 829 F.Supp.2d 1324, 1336-38 (N.D.Ga. Nov. 3, 2011) (holding that AAA Wireless Industry Arbitration Rules "incorporate the AAA Supplementary Rules for Class Arbitrations, which gave the arbitrator the power to decide whether the Arbitration Clause implicitly authorized class proceedings"); Yahoo! Inc. v. Iversen, 836 F.Supp.2d 1007, 1011-12 (N.D.Cal. Oct. 11, 2011) (holding that parties' agreement to AAA National Rules for the Resolution of Employment Disputes also constituted agreement to the Supplementary Rules).

In further support of its position, Chesapeake argues that the Sixth

Circuit expressly rejected the argument in <u>Reed</u> that incorporation of the AAA rules into an arbitration agreement is clear and unmistakable evidence that the parties agreed to submit the "who decides" issue to the AAA panel. (Doc. 5, p. 16). As to this argument, although the decision in <u>Reed</u> was followed closely by the <u>Opalinski</u> court, <u>Reed</u> is not binding precedent upon this court[5]. Further, in considering the arbitration clause in <u>Reed</u>, the Sixth Circuit looked only to whether there was an express reference to class arbitration in the arbitration clause. Because the clause did not specifically mention class arbitration, the court found it was insufficient to overcome the presumption for judicial determination of the issue of class arbitrability. As discussed above, however, it is not necessary for there to be an exact reference to or mention of the specific words "class arbitrability" in order for the court to find that the parties agreed to have the arbitrators decide the issue of class arbitrability. <u>Stolt-Nielsen, 130 S.Ct. at 1766, 1768</u>.

Relatedly, Chesapeake argues that the parties in <u>Opalinski</u> incorporated the rules into their arbitration agreement, yet the Third Circuit still held that the court was to resolve issues of arbitrability. The Burketts respond that, at the time the parties in <u>Opalinski</u> signed their agreement, the Supplementary Rules for Class Actions were not yet in effect. Regardless, Chesapeake claims that

---

[5]Chesapeake acknowledges that <u>Reed</u> is the only court to have considered and rejected the argument that incorporation of the AAA rules is evidence that the parties intended to submit class arbitrability to an arbitrator.

Rule 1(a) of the AAA rules provides that the rules that apply are those which are in effect at the time an arbitration is initiated. However, incorporation of the AAA rules by reference constitutes "clear and unmistakable" evidence that the parties intended to submit questions of arbitrability to the arbitrator, as long as what is being incorporated actually exists at the time of incorporation such that "the parties can know exactly what they are incorporating." Yahoo!, 836 F.Supp.2d at 1012 (citations omitted). Thus, if the Supplementary Rules did not exist at the time that the parties in Opalinski entered into their agreement, they could not have known that they were incorporating those rules into their agreement.

Continuing to rely on Reed, Chesapeake argues that the Burketts' incorporation argument must fail because Supplementary Rule 3 expressly provides that "[i]n construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis."

Initially, the language cited in Rule 3 by its terms applies at the "clause construction" stage, once it has been decided that the arbitrator will determine whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class. In addition, again, regardless of what the court held in Reed, that decision is not binding upon this court. Further, as indicated

17

by the AAA panel in its decision of September 11, 2014, relative to the instant action, it is not the mere existence of the rules which compelled the decision on who decides class arbitrability, but the parties express incorporation of the AAA rules which grants the arbitrators authority to decide their own jurisdiction and to decide issues of arbitrability.

Finally, Chesapeake argues that there are a number of individuals whom the Burketts seek to include in the putative class arbitration who have leases which do not incorporate the AAA rules. Moreover, Chesapeake argues that a number of leases entered into by Chesapeake provide for divergent arbitration procedures making class arbitration impossible. Chesapeake's argument on this point goes more to the issue of class certification than to the issue of whether the parties agreed to allow an arbitrator decide the "who decides" issue.

Considering all of the above, the court finds that incorporation of the AAA rules into the lease at issue, which grants the arbitrators the power to decide their own jurisdiction, vested the arbitrators with the authority in this case to decide issues of arbitrability, including the issue of "who decides" class arbitrability. Based upon this finding, Chesapeake is not entitled to summary judgment on Count I of the instant complaint. Further, in light of the court's determination, the court need not reach the issues presented in Count II of the instant complaint which go to the clause construction and, as such,

Count II will be dismissed. The Clerk of Court will be directed to close the instant action.

On the basis of the foregoing, an appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: October 17, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-3073-02.wpd

19